UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Roger Rowe,                                                   Case No. 3:20-cv-1296

             Plaintiff

           v.                                             MEMORANDUM OPINION
                                                       AND ORDER

ZF North America, Inc., *et al.*,

            Defendants

## I.     INTRODUCTION

On June 12, 2020, Plaintiff Roger Rowe filed a complaint against his alleged former employer, ZF North America, Inc., asserting employment discrimination, interference, and retaliation claims under the ADA, ERISA, and Ohio law. (Doc. No. 1). On October 26, 2020, Rowe amended his complaint to include as defendants Richard O'Laughlin and Tammy Burroughs, the Plant Manager and Plant H.R. Manager, respectively, at the time of his termination. (Doc. No. 9). The Amended Complaint alleged ERISA interference and retaliation against all Defendants (Counts 1 & 2), ADA discrimination and retaliation against ZF (Counts 3-5), and a state law claim of aiding and abetting discrimination against O'Laughlin and Burroughs (Count 6). (*Id.*).

Currently pending is a motion to compel arbitration and to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) filed by all Defendants. (Doc. Nos. 10 & 10-1). Rowe filed opposition (Doc. No. 12), and Defendants replied (Doc. No. 13). For the reasons stated below, I grant the motion to compel arbitration and dismiss the matter pending resolution of the arbitration.

## II. BACKGROUND

In February 2015, Rowe applied for a position with TRW Automotive Holdings Corporation, (Doc. No. 10-2 at 4-8), and was offered a position as Manufacturing Engineer at Kelsey-Hayes Company ("KH"), a subsidiary of TRW. (*Id.* at 9-12). Rowe began work at KH around March 30, 2015. (Doc. No. 12 at 4). Approximately two months later, ZF acquired TRW and its subsidiaries, including KH. (Doc. No. 10-2 at 1-3). Defendants assert that despite this corporate change in ownership, Rowe remained an employee of KH throughout his tenure. (*Id.*). Rowe disagrees and alleges ZF was his actual employer because he was subject to its policies and benefits, and ZF controlled his day-to-day work activities. (Doc. No. 12 at 6-7).

In July 2017, Rowe began experiencing pain and mobility issues associated with thoracic radiculitis which impacted his ability to lift, walk, and stand for long periods of time. (Doc. No. 9 at 5). As a result, Rowe requested and received a medical leave of absence, which commenced on May 10, 2018. (*Id.*). At some point after this, Rowe alleges he was advised to utilize ZF's short-term disability program, which provided up to 26 weeks of paid leave, and he did so. (*Id.* at 43-44). In October 2018, Rowe requested an extension of his medical leave. (*Id.*). His request was approved, but Rowe was transitioned to leave under the long-term disability policy which provided an additional 26 weeks of paid leave. (*Id.* at 44). Around February 8, 2019, Rowe received a termination letter, signed by Burroughs on ZF letterhead, stating "[w]e understand that you will be transitioning to Long Term Disability benefits effective 11/9/2018, which we will therefore consider your last day of employment . . . this will be considered an 'administrative termination' only . . . ." (Doc. No. 12-3 at 2).

Relevant to the current motion, Rowe's signed job application to TRW included an agreement to be bound by "the TRW Alternative Dispute Resolution (ADR) policy as a condition of employment." (Doc. No. 10-2 at 4-8). This policy required submission of "any covered

dispute…between [Rowe] and [his] employer and any supervisors or managers to ADR." (*Id.* at 8). Additionally, when Rowe signed his offer letter, he again agreed to be bound by the TRW Problem Resolution Policy ("TRW/KH Policy"). (*Id.* at 11-12).

In May 2017, ZF issued its own Problem Resolution Policy ("ZF Policy"). (*Id.* at 29-45). This policy covered "all employees hired or re-hired by ZF TRW Automotive Holdings Corp., TRW Automotive Holdings Corp., and their subsidiaries, successor and assigns…from November 1, 2006 through April 30, 2017." (*Id.* at 30). This policy also required submission of any covered dispute to ADR. (*Id.* at 37).

While largely the same, the two policies do have one crucial difference: the definition of covered disputes. (*See* Doc. No. 10-2 (Exs. C & D)). In relevant part, the TRW/KH Policy required the following disputes to be submitted to ADR: 1) involuntary separations, such as discharges and layoffs; 2) claims of discrimination, harassment, or retaliation based on protected status; and 3) any other employment-related claim provided for by state or federal law, except as otherwise excluded. (*Id.* at 21). The TRW/KH Policy goes on to exclude, in relevant part, "disputes over the content, establishment, or amendment of…Company benefits or pensions…." (*Id.*).

The ZF Policy, by comparison, provides for the following covered disputes: 1) involuntary separations, such as discharges and layoffs; 2) claims of illegal discrimination, harassment, or retaliation; 3) claims of failure to hire, promote, or consider; 4) claims of illegal revocation of a position of employment; 5) claims of violation of either state or federal wage and hour law; and 6) any other employment-related claim provided for by state or federal law, except as otherwise excluded. (*Id.* at 54). The exclusionary clause of the ZF Policy, in relevant part, excludes "disputes over . . . the content, establishment, modification or elimination of any Company retirement or other benefits . . . ." (*Id.*).

3

### III. STANDARD

In the context of a motion to compel arbitration, the court "must determine whether the parties have agreed to arbitrate the dispute at issue." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). Like on summary judgment, the moving party bears the initial *prima facie* burden of showing the existence of an agreement to arbitrate. *See Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002); *Denton v. Allenbrooke Nursing & Rehab. Ctr., LLC*, 495 F.Supp.3d 601, 607–08 (W.D. Tenn. 2020). Then, the non-movant "must show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth*, 288 F.3d at 889. If the validity of the agreement to arbitrate is "not 'in issue', [courts] must compel arbitration." *Id.* (citing 9 U.S.C. § 4). Thus, viewing the facts in a light most favorable to Rowe, I must determine "whether the evidence presented is such that a reasonable finder of fact could conclude that no valid agreement to arbitrate exists." *Danley v. Encore Capital Grp., Inc.*, 680 F. App'x 394, 397 (6th Cir. 2017) (unpublished) (quoting *Great Earth*, 288 F.3d at 889).

In conjunction with their motion to compel, Defendants have requested dismissal under Rules 12(b)(1) and 12(b)(6). (Doc. No. 10). Federal courts throughout the country have struggled with the correct procedural mechanism to dismiss a matter in favor of arbitration. *See FCCI Ins. Co. v. Nicolas Cty. Library*, 2019 WL 1234319, at *2-6 (E.D. Ky. Mar. 15, 2019) (analyzing the various standards of review employed). Yet recently, the Sixth Circuit appears to have settled on a preference for analysis under Rule 12(b)(6), stating a party's "failure to pursue arbitration in spite of a compulsory arbitration provision means that the party has failed to state a claim . . . ." *Knight v. Idea Buyer, LLC*, 723 F. App'x 300, 301 (6th Cir. 2018) (unpublished) (citing *Teamsters Local Union 480 v. United Parcel Serv., Inc.*, 748 F.3d 281, 286 (6th Cir. 2014)). Thus, in the event I find the existence of a valid arbitration agreement which applies to Rowe's claims, dismissal is most appropriate under Rule 12(b)(6). *Id.*

## IV. DISCUSSION

As a preliminary matter, Rowe devotes a large portion of his opposition on a discussion of which entity is his actual employer in an attempt to require application of the ZF Policy instead of the TRW/KH Policy. (*See* Doc. No. 12 at 11-14). I need not reach this issue to determine whether Rowe's claims are arbitrable. *See First Union Real Estate Equity & Mortg. Invs. v. Crown Am. Corp.*, 23 F.3d 406, at *6 (6th Cir. 1994) (unpublished table decision) (finding district court erred by focusing on which contract would control outcome of parties' dispute rather than determining if claims were subject to arbitration).

At this stage, I am tasked only with determining whether Rowe agreed to arbitrate his specific claims, but with whom he made that agreement – the predecessor or successor entity – is not determinative of its enforceability. *See, e.g., John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 550-51 (1964) (holding a company can be bound by an arbitration agreement that its predecessor signed where there is "substantial continuity of identity in the business enterprise…."); *Southward v. S. Cent. Ready Mix Supply Corp.*, 7 F.3d 487 (6th Cir. 1993). Regardless, and as discussed below, I find either iteration of the arbitration agreement requires Rowe to submit all his claims to an arbitrator.

The Federal Arbitration Act ("FAA") strongly favors arbitration. *See, e.g., Albert M. Higley Co. v. N/S Corp.*, 445 F.3d 861, 863 (6th Cir. 2006); *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). Specifically, it provides that all agreements to arbitrate "shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. State contract law will govern these generally applicable contract defenses. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995).

In the context of a motion to compel arbitration, the Sixth Circuit applies a four-prong test to determine: 1) whether the parties agreed to arbitrate; 2) the scope of that agreement; 3) if federal statutory claims are asserted, whether Congress intended those claims to be arbitrated; and 4)

whether to stay the remainder of the proceedings pending arbitration. *Stout,* 228 F.3d at 714. It is settled authority that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

### A. Statutory Claims Intended to be Arbitrable

It is well-established that Congress intended ADA and ERISA claims to be arbitrable. *See, e.g., Simon v. Pfizer Inc.*, 398 F.3d 765, 774-75 (6th Cir. 2005) (collecting cases to support ERISA claims are subject to arbitration under FAA); *Prachun v. CBIZ Benefits & Ins. Servs., Inc.*, No. 2:14-CV-2251, 2015 WL 5162522, at *5-6 (S.D. Ohio Sept. 3, 2015) (finding ERISA silent on arbitrability and weight of authority both in and out of the Circuit suggests ERISA does not preempt the FAA); *Barna v. Wackenhut Servs., LLC*, No. 1:07 CV 147, 2007 WL 3146095, at *7 (N.D. Ohio Oct. 25, 2007) (relying on language in ADA at 42 U.S.C. § 12212 to find Congress did not intend for ADA claims to be non-arbitrable); *Kelch v. Pyramid Hotel Grp.*, No. 1:18-cv-707, 2020 WL 489237, at *3 (S.D. Ohio Jan. 30, 2020) (finding ADA claims arbitrable).

### B. Agreement to Arbitrate

State contract law governs the formation of arbitration agreements. *First Options*, 514 U.S. at 944. Rowe does not raise any specific contractual argument to dispute the formation of either arbitration agreement. In both instances, the agreement to arbitrate was valid.

Rowe agreed to the TRW/KH Policy by way of signature on two occasions, his application and his offer letter. *See Allied Steel and Conveyors, Inc. v. Ford Motor Co.,* 277 F.2d 907, 913 (6th Cir. 1960) (reiterating "the cardinal rule, that in the absence of fraud or willful deceit, one who signs a contract which he has had an opportunity to read and understand, is bound by its provisions."). Even so, "there is no requirement that an arbitration agreement be signed in order to be valid and enforceable." *Dantz v. Apple Ohio LLC,* 277 F. Supp. 2d 794, 801 (N.D. Ohio 2003) (citing *Brumm v. McDonald & Co. Sec's, Inc.,* 603 N.E.2d 1141, 1145 (Ohio Ct. App. 1992)).

6

If the agreement is supported by consideration, including continued employment, it is binding. *See, e.g., Dantz*, 277 F. Supp.2d at 801 ("What is required to validate the arbitration agreement and make it contractual is an offer and acceptance supported by consideration."); *Raasch v. NCR Corp.*, 254 F. Supp. 2d 847, 864 (N.D. Ohio 2003) ("[W]here an employer informs its employees that from this point forward, certain disputes must be directed to arbitration, while the employees are not obligated to continue in their employment, as long as they do, they are obligated to comply with the terms set by the employer . . . The consideration is given by the employer when the employee accepts the offer of continued employment.").

Rowe's explicit assent to the TRW/KH Policy and his continued employment following implementation of the ZF Policy both evidence the existence of binding arbitration agreements. In contrast, Rowe has not presented any evidence to demonstrate a genuine issue of material fact as to the formation of either policy. Thus, he has failed to carry his burden of proof to show that no valid arbitration agreement exists. *See Great Earth*, 288 F.3d at 889.

Additionally, under both policies, Rowe agreed to arbitrate his claim against O'Laughlin and Burroughs. An agent may be covered by the principal company's agreement requiring arbitration if the agent's alleged wrongful acts relate to their capacity as an agent for the principal. *See Arnold v. Arnold Corp.*, 920 F.2d 1269, 1281-82 (6th Cir. 1990) (holding non-signatory agents may be bound by their principal's arbitration agreements if allegations involve acts in scope of agency). Rowe's claim against O'Laughlin and Burroughs stems from their participation in his termination – an action within the typical scope of employment for both a Plant Manager and Plant HR Manager. *See, e.g., Igniter v. Radmacher*, No. 1:13 CV 1599, 2013 WL 5279343, at *2-4 (N.D. Ohio Sept. 18, 2013) (collecting cases applying arbitration agreements to non-signatories); *Genaw v. Lieb*, 2005-Ohio-807, 2005 WL 435211, at *2-3 (Ohio Ct. App. Feb. 25, 2005) (applying arbitration agreement to claims against non-signatory individual employee). Thus, both the TRW/KH Policy and the ZF Policy

7

require the arbitration of covered disputes against supervisors or other company agents. (*See* Doc. No. 10-2 at 8, 11, and 54).

### C. Scope of the Agreement

To compel arbitration, the claims at issue must be subject to arbitration under the particular contract clause. *Stout*, 228 F.3d at 714. Because "arbitration is a matter of contract between the parties, [ ] one cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration." *United Steelworkers, Local No. 1617 v. Gen. Fireproofing Co.*, 464 F.2d 726, 729 (6th Cir. 1972); s*ee also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) ("[A] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*.") (emphasis in original). But, "the court should apply a presumption of arbitrability, resolve any doubts in favor of arbitration, and should not deny an order to arbitrate 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *United Steelworker of Am. v. Mead Corp.*, 21 F.3d 128, 131 (6th Cir. 1994) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation, Co.*, 363 U.S. 574, 582-83 (1960)).

#### 1. Counts 1-6 under TRW/KH Policy

Rowe does not contest that the scope of the TRW/KH Policy requires the arbitration of all his claims. (*See* Doc. No. 12 at 11-19). Not only are some of his claims called out expressly as covered disputes, such as his ADA claims, but there is also a catch-all provision which applies generally to "[a]ny other employment-related claims" unless otherwise excluded. (Doc. No. 10-2 at 21). As each of Rowe's remaining claims are "employment-related" and as Rowe makes no argument to exclude his other remaining claims from arbitration under the TRW/KH Policy, (*id.*), I conclude the scope of that arbitration clause encompasses all his claims.

8

### 2. Counts 3-6 under ZF Policy

Additionally, Rowe makes no argument regarding the scope of the ZF Policy or its applicability to Counts 3-6. (*See* Doc. No. 12 at 11-19). Again, the specific definition of covered disputes along with the broad catch-all provision of the ZF Policy applies to compel arbitration of Rowe's claims in Counts 3-6. (*See* Doc. No. 10-2 at 37).

### 3. Counts 1 & 2 under ZF Policy

Rowe does argue, though, that his ERISA claims (Counts 1 & 2) are excepted from arbitration under the ZF Policy because the definition of "covered dispute" excludes disputes over the "modification or elimination of any Company retirement or other benefits". (*See* Doc. No. 12 at 17-19; *see also* Doc. No. 10-2 at 37). Rowe argues the elimination of his health benefits upon termination falls within the plain language of this exclusion. (Doc. No. 12 at 17-19). Defendants counter the exclusion applies to ZF's settlor functions under ERISA and is intended to prevent plan participants from challenging the form and structure of its ERISA plan. (*See* Doc. No. 13 at 3-4). Further, Defendants argue Rowe is not challenging the modification or elimination of benefits, but his alleged unlawful termination which resulted in his loss of benefits. (*Id.* at 4).

"Contract language is ambiguous if it is subject to two reasonable interpretations." *Schachner v. Blue Cross/Blue Shield of Ohio,* 77 F.3d 889, 893 (6th Cir. 1996). When a provision is ambiguous, a court should "use traditional methods of contract interpretation to resolve the ambiguity". *Boyer v. Douglas Components Corp.*, 986 F.2d 999, 1003 (6th Cir. 1993). And while typically courts resolve ambiguities against the drafter of an agreement, "where ambiguity in agreements involving arbitration exists, such as here, the strong presumption in favor of arbitration applies instead." *Huffman v. Hilltop Companies, LLC*, 747 F.3d 391, 396-97 (6th Cir. 2014).

Here, the ambiguity arises from an imprecise relationship between the listed "covered disputes" and the applicability of the exclusionary clause. (*See* Doc. No. 10-2 at 37). The section

9

begins by listing five categories of specified disputes which must be referred to arbitration; it then concludes with a broad catch-all provision which includes the only reference to the exclusionary clause. (*Id.*).

Accordingly, it is reasonable to interpret the exclusionary language as applying only if the claim is proceeding to arbitration under the catch-all provision as opposed to under any of the five specified "covered disputes." But it could reasonably be argued otherwise. Compounding the issue, the exclusionary language upon which Rowe relies to assert his claim is not arbitrable falls short of expressing an explicit exclusion of all ERISA claims. *See Mead Corp.*, 21 F.3d at 131 (when interpreting arbitration clauses, "only an express provision excluding a particular grievance from arbitration or the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.") (internal quotation omitted). This is particularly apparent when Rowe's ERISA claims could arguably fall within two of the listed "covered disputes"; either "involuntary separation" or "claims for illegal discrimination, harassment or retaliation," if not otherwise excepted by the exclusionary clause. (*See* Doc. No. 10-2 at 37).

Because the ZF Policy is susceptible to more than one reasonable interpretation, I cannot conclude with "positive assurance" that the agreement was not intended to cover Rowe's asserted ERISA claims. *Mead Corp.*, 21 F.3d at 131. It is possible on the face of the agreement to interpret the "covered disputes" section to include Rowe's ERISA claims. Further, the exclusionary clause does not express an explicit intent to exclude all ERISA claims from arbitration. Considering these doubts and ambiguities, I must resolve the issue in favor of arbitration. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, [including when] the problem at hand is the construction of the contract language itself . . . ."); *see also Bratt Enter., Inc. v. Noble Int'l Ltd.*, 338 F.3d 609, 613 (6th Cir. 2003) (ambiguities as to the scope of arbitration clause should be resolved in favor of arbitration).

This finding is also supported by application of the *Fazio* test which states: "A proper method of analysis [of the scope of an arbitration clause] is to ask if an action could be maintained without reference to the contract or relationship at issue. If it could, it is likely outside the scope of the arbitration agreement." *Fazio v. Lehman Bros., Inc.,* 340 F.3d 386, 395 (6th Cir. 2003); *see also Jones v. Halliburton*, 583 F.3d 228, 240-41 (5th Cir. 2009) (when reviewing scope of arbitration clause, "focus on the factual allegations in the complaint rather than the legal causes of action asserted").

Here, Rowe's ERISA claims are inextricably linked to his employment relationship with ZF. The viability of these claims is dependent upon the underlying motivations for the termination of his employment relationship, such that it is reasonably foreseeable these claims would fall within the scope of his arbitration agreement with his employer. *See, e.g., Kumiko Morioka v. Nissin Travel Servs., Inc.,* No. 18-12365, 2018 WL 704463, at *4-6 (E.D. Mich. Dec. 28, 2018) (arbitration required under broad arbitration clause where all alleged wrongful conduct arose from employment relationship) *report and recommendation adopted at Kumiko*, 2019 WL 198986 (E.D. Mich. Jan. 15, 2019); *Huttsell v. Radcliff Company, Inc.*, No. 3:16-cv-796, 2017 WL 938324, at *2 (W.D. Ky. Mar. 9, 2017) (applying *Fazio* test to find ERISA claims within scope of arbitration clause).

For the reasons discussed above, Counts 1-6 are arbitrable under the explicit language of the TRW/KH Policy. Similarly, Counts 3-6 fall squarely within the scope of the ZF Policy arbitration clause. As to Counts 1 and 2, I resolve any doubt of the scope of the ZF Policy in favor of arbitration because "only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by the arbitrators." *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004).

**D. Stay of Proceedings**

The FAA instructs "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had . . . ." 9 U.S.C. § 3.  But, where "all claims are referred to arbitration, a court may properly dismiss the complaint." *Kelch v. Pyramid Hotel Grp.*, No. 1:18-cv-707, 2020 WL 489237, at *3 n.5 (S.D. Ohio Jan. 30, 2020) (collecting authority in support of court's ability to dismiss a matter rather than impose a stay); *see also Andrews v. TD Ameritrade, Inc.*, 596 F. App'x 366, 372 (6th Cir. 2014) (finding dismissal appropriate where there is nothing for the district court to do but execute the judgment).  Whether to stay or dismiss a case when all claims have been referred to arbitration is within the discretion of each court. *Gilchrist v. Inpatient Med. Servs., Inc.*, No. 5:09-CV-2345, 2010 WL 3326742, at *5 n.2 (N.D. Ohio Aug. 23, 2010).  In this instance, because all Rowe's claims are subject to arbitration, I find a dismissal without prejudice better serves judicial economy.

## V.     CONCLUSION

In sum, even viewing the facts in a light most favorable to Rowe, he has failed to demonstrate the existence of a genuine issue of material fact to "call into question the formation or applicability of [the] specific arbitration clause[s]". *Granite Rock*, 561 U.S. at 299-300; *Great Earth*, 288 F.3d at 889 (If the validity of the agreement to arbitrate is "not 'in issue', [courts] must compel arbitration.").  For the reasons stated above, I grant the motion to compel arbitration and dismiss the matter without prejudice pursuant to Fed. R. Civ. P. 12(b)(6).  (Doc. No. 10).

So Ordered.

                                                                s/ Jeffrey J. Helmick
                                                                United States District Judge